UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONES SAGESSE,

     Petitioner,

v.                                Case No.:  2:23-cv-7-SPC-KCD

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____/

## OPINION AND ORDER

Before the Court is Petitioner Rones Sagesse's Amended Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 10).  Sagesse challenges a state conviction of aggravated assault on two law enforcement officers.

## Background

The State of Florida charged Sagesse with two counts of aggravated assault on a law enforcement officer.  Sagesse pled not guilty.  Attorney Brent Rose of the Office of Regional Counsel represented Sagesse through most of the trial.  After the State announced it had two witnesses left, Sagesse asked the Court to discharge Rose so Sagesse could continue *pro se*.  After questioning Sagesse to ensure he was competent to waive counsel, the court granted his request.

The State established the following facts at trial. On November 16, 2016, Susan Solt saw her neighbor Brianna sitting outside with her ex-boyfriend, Sagesse. Brianna appeared scared, and Solt heard Brianna and Sagesse yelling and arguing. Solt called 911. Deputy Sheriffs Joseph Clark and Jeffrey Bastedo responded to the call. It was just before nightfall, so there was still a bit of light. The officers arrived in separate, marked patrol vehicles and parked about two houses down. As they were walking towards the duplex, they saw Sagesse hunched over outside the door. Bastedo called out to Sagesse, and Sagesse jumped up and pointed a handgun at the officers.[1] Bastedo, who was about four feet in front on Clark, fell backwards, pulled his gun, and fired at Sagesse. Clark also stumbled backwards and pulled his gun but did not fire. Sagesse fled behind the duplexes.

Detective Jamie Nolen found a patch of blood in a backyard about a block from the scene. He also saw blood along the fence line and compressed foliage on top of the fence, as if someone had climbed over it. Nolen followed the blood trail and found a handgun. Later testing showed that DNA from the blood matched Sagesse's DNA.

Deputy James Vanpelt found Sagesse about a quarter mile from the crime scene—his pants were wet and bloody, and his leg was bleeding from two

---

[1] Bastedo saw a gun in Sagesse's hand, while Clark saw an object he could not identify. Sagesse denied he had a gun.

gunshot wounds.  Vanpelt put Sagesse in handcuffs and called for EMS, who took Sagesse to Lee Memorial Hospital.  Sergeant Aimee Lusk arrived at the hospital while Sagesse was receiving treatment.  Lusk introduced herself to Sagesse, and Sagesse said, "I was sad.  I didn't have a gun.  I just held my hand out like this"—Sagesse made what Lusk called a finger pistol—"I pointed it at him, but I didn't have a gun at that time."  (Doc. 17-2 at 284).  Lusk later arrested Sagesse.

The jury found Sagesse guilty as charged on both counts, and the court sentenced him to 25 years in prison.  Sagesse appealed, and the Second District Court of Appeal of Florida (2nd DCA) affirmed without a written opinion. Sagesse filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  The postconviction court summarily denied the Rule 3.850 motion, and the 2nd DCA affirmed without a written opinion. Sagesse then timely filed the habeas petition currently before this Court.

## Applicable Habeas Law

### A. AEPDA

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).  A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *White*, 134 S. Ct. at 1702; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).

When reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

**B. Exhaustion and Procedural Default**

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't. of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Procedural defaults generally arise in two ways:

> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

*Cortes v. Gladish*, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

Another gateway through a procedural bar exists for claims of ineffective assistance of trial counsel. If the state court did not appoint counsel in the collateral proceeding, or if collateral-review counsel was ineffective, a petitioner may overcome procedural default by "demonstrat[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012).

## C. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.*

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting *Richter*, 562 U.S. at 101). Thus, a habeas petitioner must "show that

no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Sealey*, 954 F.3d at 1355 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The critical question on federal habeas review is not whether this Court can see a substantial likelihood of a different result had defense counsel taken a different approach. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Id.* (quoting *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009)).

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." *Sealey*, 954 F.3d at 1355. And "[w]hile the *Strickland* standard is itself hard to meet, 'establishing that a state court's application of

*Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Id.* (quoting *Richter*, 562 U.S. at 105).

<b>Analysis</b>

### A. Grounds 1 and 4: The State failed to prove every element of the charged crimes

In Ground 1, Sagesse states that Clark and Bastedo testified they did not identify themselves as law enforcement officers when they confronted Sagesse, and he notes they were dressed in black and parked about two houses down. In Ground 4, Sagesse argues the State did not prove that he knew Clark and Bastedo were law enforcement officers. The Court liberally construes Grounds 1 and 4 as claims that Sagesse's convictions are not supported by constitutionally sufficient evidence, in violation of the Fourteenth Amendment's Due Process Clause.[2] *See Jackson v. Virginia*, 443 U.S. 307 (1979). But Sagesse did not challenge the sufficiency of the evidence in state court, either at trial or on appeal. Thus, Ground 1 is unexhausted and procedurally barred.

### B. Ground 2: Trial counsel failed to cross-examine witness Chamelle Mott

At trial, Chamelle Mott—Sagesse's roommate at the time—testified she saw Sagesse in possession of a firearm on November 16, 2016. (Doc. 17-2 at

---

[2] If Sagesse is attacking the sufficiency of the evidence under Florida law, that claim is not cognizable on federal habeas review. *See Wilson*, 562 U.S. at 5.

240). That was the full extent of her testimony. Rose did not cross-examine Mott. Sagesse argues Rose was constitutionally ineffective because Mott was the only witness to "place [him] with a firearm." (Doc. 10 at 6).

Sagesse raised this ground in his Rule 3.850 motion. The state postconviction court denied it:

> 9...Defendant alleges that counsel was ineffective by failing to cross-examine witness Chamelle Mott "in order to figure out what was the exact time and location of the Defendant when she saw him with a firearm and whether he was inside or outside the house when he had this firearm..." Specifically, he claims that this was important because Ms. Mott later "decided to write a sworn affidavit stating that the Defendant had left the firearm inside the house while he was outside the house..." and asserting that she claimed to own the gun when the officers arrived to perform the search. Defendant also alleges that Ms. Mott "was the only one that could've placed the Defendant with a firearm." He also relates in his motion that this was information that was known to sentencing counsel or defendant at the time just after the trial. In his Reply, Defendant argues that the testimony of the FDLE lab analyst that the pool of blood located a foot and a half from the gun contained his DNA would not have proven that he had handled the firearm, especially as there had been trial testimony that he had been shot and was bleeding copiously as he went from one area of the neighborhood to another.
>
> 10. Trial testimony reflects that when the deputies approached Defendant, he suddenly jumped up from where had been sitting in the yard and aimed his hand at them. This startled the deputies, causing them to believe that Defendant was shooting at them; Deputy Basteda [sic] testified that he actually saw Defendant holding a gun and brass cartridges fall from the gun. Further testimony demonstrated that the gun had held at least one live cartridge when it was found by police, and that it had been found next to a pool of Defendant's blood. Thus, as Ms. Mott's testimony was not the only evidence that Defendant had had a gun, Defendant cannot demonstrate prejudice. Defendant has failed to

demonstrate any entitlement to relief. Ground 3, therefore, is DENIED.

(Doc. 17-2 at 666-67).

The state court's rejection of this claim was a reasonable application of federal law. As the Court noted, the record conclusively refutes Sagesse's claim that Mott's testimony was the only evidence connecting him with a gun. Even assuming cross-examination could have damaged Mott's credibility, the State used DNA evidence and Bastedo's eyewitness testimony to show that Sagesse had a gun and pointed it at the officers. The state court reasonably concluded that the lack of cross-examination did not prejudice Sagesse. Thus, denial of this ground is appropriate under *Strickland*. Ground 2 is denied.

## C. Ground 3: Trial counsel failed to move to suppress Sagesse's statement to police

Sagesse next argues Rose should have moved to suppress the statement he made to Sergeant Lusk on the basis that he was "under the influence of several medications." (Doc. 10 at 6). Sagesse raised a similar ineffective-assistance claim in his state postconviction motion but with a different factual basis. Sagesse argued in Ground 5 of his Rule 3.850 motion that Rose should have moved to suppress the statement because Sagesse was not informed of his *Miranda* rights. The state court rejected that argument because, according to Lusk's unrefuted testimony, the statement was spontaneous, so a motion to suppress would not have succeeded. The state court thus reasonably denied

Sagesse's *Strickland* claim because counsel cannot be deemed ineffective for failing to raise a meritless motion, and Sagesse was not prejudiced by its omission.

The state court did not consider Sagesse's medication-based argument because he did not assert it. To satisfy the AEDPA's exhaustion requirement, petitioners must "present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004). Sagesse did not exhaust the particular claim he raises here because he did not raise the particular factual basis in state court. The state post-conviction court's rejection of Sagesse's related claim, as presented in his Rule 3.850 motion, was a reasonable application of *Strickland*.

Sagesse cannot circumvent the procedural bar. He does not attempt to show cause or prejudice, and he fails to show this ground is a "substantial one" under *Martinez*—i.e., that it "has some merit." *Martinez*, 566 U.S. at 14. The Constitution does not require exclusion of a defendant's out-of-court statement merely because the defendant was under the influence of drugs or alcohol. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). Sagesse does not accuse Lusk of coercing him or otherwise taking

advantage of his drugged state. Thus, Sagese has not identified a constitutional ground for suppression of the statement. Nor does he identify any basis for suppression under Florida law. Ground 4 is thus unexhausted and procedurally barred.

### D. Ground 5: Trial counsel failed to retain an expert witness

Finally, Sagese argues Rose should have hired a DNA expert to testify that no DNA was found on the recovered firearm, that no gunshot residue was found on Sagese, and that Sagese was shot from behind while running away. Sagese did not raise this claim in state court, so it is unexhausted and procedurally barred. Sagese makes no attempt to show cause and prejudice, and he cannot use *Martinez* to circumvent the procedural bar because this ground is not substantial. Sagese merely speculates what an expert witness might say. Even if Sagese could identify a witness who would have given the desired testimony, there is no reasonable probability it would have changed the outcome. A lack of DNA evidence on the recovered gun would not likely have overcome Bastedo's eye-witness testimony and the discovery of Sagese's blood near the gun, a lack of gunshot residue is irrelevant because Sagese was not accused of firing the gun, and testimony that Sagese was shot while running away would not refute any element of the offense. Ground 5 is denied.

## DENIAL OF CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted). Sagesse has not made the requisite showing here and may not have a certificate of appealability on his petition.

Accordingly, it is now **ORDERED:**

Rones Sagesse's Amended Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 10) is **DENIED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 17, 2024.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: FTMP-1
Copies:  All Parties of Record